Kurtz et al. of the New York Presbyterian Hospital and Brenda Lawson, City of New York 237548, thank you Well, but Mr. Watson Thank you, Mr. Watson You too You can stay right there Good morning, Mr. Kornbaum Good morning, Judge Nice to see you again Nice to see you So when the Kurtzes bring their daughter     to Mount Sinai on August 9th Dr. Renand, after examining her calls in the child registry and registers a complaint or a notification regarding a tender clavicle possible fracture of the clavicle and I that gets the ball rolling but five days later the the child is seen by Dr. Grimm who not without significance was Mount Sinai's child abuse specialist and she notes the following in her declaration submitted in opposition to the motion for summary judgment she says one she had a femur fracture consistent with a fall on a tile floor which rules out, if correct, rules out child abuse as reported by the parents that her old rib fractures she had old rib fractures that can be attributed to her stay in the NICU at Mount Sinai But it seems to me you're relying on a declaration that post dated the probable cause decision, right? I'm getting there, Judge Sullivan I promise The clock is ticking, so let's get there We've read the records The last paragraph I was interviewed, last sentence I was interviewed by ACS caseworkers on August 14th and shared this opinion with them So she told them, she had two conversations with Ms. Lawson and she's claiming in this declaration that's what's in the declaration. This is the treating doctor, correct? No, this is the original treating doctor is Dr. Renand who made the call This is one of the child abuse experts There were more than one Some thought there was more than one doctor's opinion, but this subsequent doctor's opinion was a little bit more ambivalent that this is not child abuse No, it's ambivalent based upon the notes of Ms. Lawson and I think this is significant because it shows, A, something that the city's argument, why the city's argument is incorrect, and B, why judge Angle Doesn't this come down to whether the city whether there was probable cause to issue a removal order and whether the city, whether the Department of Children Workers acted appropriately given the information they were given It's a hard job for them. They don't have a crystal ball. So if they have three doctors telling them, this child the parents claim the father claims he dropped the child on her head by accident and the doctors look at the child examine the child, notice the parent's behavior in the hospital telling caregivers to walk away don't examine, not allowing them to fully examine the child, why wouldn't the workers for the department be concerned in exercising good judgment not take that risk and remove the child There's two questions I hear two questions Judge Combs one of which is yes, of course the standard is probable cause. Nobody disagrees and the issue is whether they had the requisite amount of data that gives rise to probable cause. But the other issue is what did they know, what did they tell the family court attorney who is the equivalent of the prosecutor in this case. And I know you Judge Sullivan and you Judge Loehr and I believe you as well Judge Combs were all former prosecutors If this information if you were a prosecutor, not only would you have to want to know this information from Dr. Grimm but you would also have to disclose it. It says clearly Brady I'm just using this as an analogy to the data what's known and then what does Rodriguez tell LeCondro Well I think maybe this is a question you could take a crack at I mean if what was presented to the judge included correct statements of everything that Dr. Grimm had said and all the doctors no omissions, no misstatements your view is that would not be sufficient to establish probable cause the sole piece of information that they would have would, in fact I just went back and looked at the petition to prepare and the sole piece of information they would have had would have come from Dr. Lubica which was her opinion that it was child abuse and this massive amount of brute force which nobody else, nobody else opines. Not anybody who examined her other than Dr. Lubica gives this statement that it had to have been child abuse and that it was brute force. It had to have been child abuse it just had to perhaps maybe be, probably be child abuse. Sure, I'm just talking about what she said I worry that you're overstating some of what the doctors said I mean some of them were more equivocal, right? They were saying that it was inconclusive whether or not there was a clavicle break or the injuries were also consistent with a bone problem, but they weren't necessarily inconsistent with abuse, right? Yes, there was. I disagree with that First of all, it was there was no evidence of there was a suspicion in the first instance about a clavicle fracture. That was what got the ball rolling as I said on the 9th by Dr. Renand Five days later, if my math is correct, on the 14th Dr. Graham tells Lawson who tells Rodriguez there's no clavicle fracture I lifted her arms up, I looked at the x-rays, no clavicle fracture So what happens, what gets told, what gets put into the petition the exact opposite But didn't Dr. Graham your claim is that the request was submitted to the judge to remove the children was false as to what Dr. Graham had and you claim that what was false was the statement that Dr. Graham had not yet formed any opinion as to whether there was evidence of child abuse, correct? That's the claim of what was false. Correct. Okay. But Dr. Graham's opinion was that at this time, there needed to be more tests to be conducted to determine whether there was child abuse, correct? No, not necessarily Did I misread the record? That comes from Dr. Dawson's notes And if you look at what Dr. Graham says in her- Didn't Dr. Graham say the baby has old healing rib fractures that may have occurred when she either was in the NICU or at home? Right, but nobody's saying, nobody is claiming that the rib fractures was evidence of child abuse. Nobody. Why not? Nobody did. I can't, why not? Because they're not. Well, a child who presents to the hospital dropped on its head and the parents are concerned about injuries a typical child abuse expert would examine the child's entire body. Having presided over a trial as a child judge of child abuse of a four month child who can't speak a proper examination involves looking at the entire child's body to determine whether there are old fractures indicative of abuse. So why wouldn't that be indicative of abuse? Because nobody's claiming that. Dr. Grim says it doesn't say it. Dr. Renan doesn't say it. Nobody says- Did Ms. Grim or Dr. Grim state that there needed to be more tests done to determine whether this is abuse or not? That is what Dr. Lawson is claiming. If you look at- And you're saying that one doctor falsified what the other doctor stated? No, no, that's- I'm sorry. That comes from Ms. Lawson who is one of the two defendants, ACS caseworkers. That's her notes. But if you read what- Oh, I'm suggesting, Judge, not suggesting, I believe this is the case, there's a disputed issue of material fact on this issue. When you read, when you look at Dr. Dr. Grim is saying nothing of the kind in her declaration and I would get, I get the post you know, the after the fact argument, but she's saying I told that to them contemporaneously. But if there's another doctor who says when the child came to the ER with the head trauma, there's no way that child had a broken leg and that didn't that- I would have noticed it and it must have happened afterwards. What is the judge supposed to do? The judge is supposed to discount that? So I would say typically Judge Sullivan, I understand, but when you have nobody else specifically saying that and then you have the added component of the brute force cause of the break, alarm bells should be going off and that's got to be told to the prosecutor as well. When I say prosecutor the family court attorney. I believe my time is up. I'm here. I have a little bit of time on rebuttal. Can I just make one point before I sit down? Just about the issue of qualified immunity is obviously lurking. If you find that there are disputed facts about probable cause, that there are not disputed facts about probable cause on the state law claims against the city there should be the city can be held liable. If you find that there's disputed facts about whether there was a constitutional deprivation, this court in Triolo made clear made that clear that obviously qualified immunity doesn't run to the city and even if police officers or state actors are entitled to qualified immunity there is a state law malicious prosecution claim and that the city can still be held liable. Yes, of course. I am out of time. If conversely we were to find that there's no disputed issue of probable cause, on the issue of probable cause, you would agree then that that would resolve both the federal and state crimes? Against the city. Not against, I didn't get a chance to talk about Lupica and the hospital but I think that there's enough facts that there's a... Yes, Judge. I'm sorry. Yes, Judge. If there's probable cause, there's no malpractice claim to get federal state against the city but that begs the question about the hospital. We'll hear from counsel of the city first, I believe. Yes. Thank you, Your Honors. May it please the court. Susan Paulson on behalf of the city police. Your Honors, the district court properly granted summary judgment to the city defendants because the malicious prosecution claims fail as a matter of law. Here, the probable cause question is not a close call. And so the court does not need to grapple with whether or not a federal malicious prosecution claim exists in this context. Though we pointed out that the issue is ripe for review. Here, the first report filed with the state central registry was not filed on August 9th, as counsel stated when the baby first presented to the emergency room. It was filed on August 13th, four days later. And if you look in the record at page 342, the narrative states that the reason for the filing was because the nature of the femur injury was considered to be inconsistent with the explanation provided by the parents. In the miscellaneous information that was added with that, other considerations that led to the filing, it was noted that there was a possible clavicle fracture that needed to be explored. So I just wanted to be clear that the reason this was first brought to the attention of ACS was because the doctor believed that the nature of the femur injury... Well, no question that's what first spawned this thing. But I guess, I think the point Mr. Kornbaum is making is that by the time they went to the judge, the clavicle had been cleared up. It was no longer, there was no longer an argument that it was caused by abuse. Do you agree with that or disagree with that? I would say that by the time they went to the judge, it was clear that the x-rays of the clavicle were inconclusive. One of the doctors described them as iffy. In the case notes, if you look at the case notes, pages 347 to 380 of the record, the doctor said that, and I'm not a doctor so I don't understand why this is true, they would need to wait for more healing for the x-ray to reveal whether or not there had been one. But certainly, it was reflected that it was inconclusive. There was no evidence that there had been a clavicle fracture. Now, the probable cause was based on the fact that there were two independent reports to the central registry. One on August 13th, four days after the child had first presented to the emergency room, after they had then discovered the femur fracture. And one on August 28th, 15 days later, filed by the hospital for special surgery, after further examination, conversation among the doctors at the three hospitals about the variety of actual and possible injuries indicated on this infant's body. There were healing rib fractures that could have occurred in the NICU, because the baby had spent eight weeks in the NICU and was very fragile. There was also the possibility of a clavicle fracture, which was inconclusive. They were unsure whether that existed. And there certainly was a femur injury, which three doctors at three separate hospitals had found inconsistent with the explanation given. Regardless of whether or not Dr. Lupico was the only doctor who emphatically stated that some sort of twisting force was needed, the others had concerns about the explanation. So, in addition to the fact that doctors from three hospitals are concerned that the fracture was unlikely to have occurred in the manner explained, doctors at Mount Sinai and Hospital Special Services also noted the healing rib fractures. And then there were two doctors who reported the possibility that there may have been a clavicle fracture, which was inconclusive. And ACS proceeded with deliberation here, Your Honors. The first report was filed on August 13th. The second report was filed on August 28th, and the petition was not filed until August 30th. By that point, ACS had spoken with a number of doctors at three different institutions, and certainly their opinions were not uniform at all. This was all circumstantial evidence. There was no direct evidence here. That is certainly correct. But there's no dispute here. The plaintiffs don't dispute that the State Central Registry reports and the existence of other healing fractures supported a finding of probable cause. Their argument is solely that there's evidence of bad faith sufficient to rebut a presumption. But rebutting the presumption wouldn't overcome the independent evidence establishing probable cause, so this court does not need to even reach the issue of bad faith. Your position is that even if what was given to the judge had been explained the nuance of Dr. Grimm's opinion more precisely, and the word conclusive, as to the clappical, would have said inconclusive, that that wouldn't have changed the analysis in terms of the probable cause to remove the child for the child's protection? Yes, Your Honor. Absolutely, that's 100% correct. And to be clear, the children were removed but allowed to remain in their home just in a maternal, weren't they replaced with relatives, maternal grandparents? So the removal was on consent, First Your Honor, and on consent, the children were placed in the home of the maternal uncle. The mother was permitted to live there as she was still breastfeeding, and the father was coming and going. They were allowed unlimited but supervised contact with the children. Later on, they agreed to a different arrangement in which the children were returned to the parent's home in the care of the maternal grandmother. So again, the parents had unlimited access, but it had to be supervised. The maternal grandmother was the custodian. Let me just understand something you said about bad faith, because I do think that that's the crux. Sure, Your Honor. But maybe I misunderstood. I thought that one of your points or arguments was that there is no record evidence that any of the ACS employees made a false or misleading statement. Is that right? That is absolutely correct, Your Honor. But you're telling me that we don't have to deal with that. Your Honor, that's correct, because the plaintiff hasn't disputed the independent evidence of probable cause. What they're arguing is that evidence of bad faith rebuts the presumption. The presumption arises from the removal order, but we don't have to get to the presumption from the removal order, because independently there's sufficient probable cause here. If this course decides that probable cause arises as a result of the presumption from the removal order, I would argue, as Your Honor just stated on my behalf, that there is not... That was just a question. Sorry to misspeak. As Your Honor just framed as a question, that there's not sufficient evidence. They didn't deduce any evidence of bad faith here that would rebut the presumption of probable cause. Okay. Is Mr. Kominska... Is that it? Sure. I would just finally add that in the alternative, the district court grant of summary judgment could be affirmed on the basis of qualified immunity as well, and I'll rest on my brief for that point. Thank you very much. If... Right. Yes. Mr. Kominska. Good morning, Your Honors. Glenn Kominska with the Firm Morrill, leveling the party counsel for the medical defendants, Dr. Lupica and Will Cornell. And I respectfully ask this court to affirm the judgment of the district court. Mostly I rely as to probable cause on what learned counsel for the city presented. We talked about this last night to make sure in our limited time we were effective. There is an argument unique as to my clients with regard to whether or not they even initiated the proceedings, the removal proceedings, and those proceedings were not in any way, shape, or form initiated by Dr. Lupica. Nothing she did can be said to have importuned that investigation, that proceeding, and while counsel, I'm sorry, while the plaintiffs take the position that there was a false statement made, there's nothing in the record to indicate that even the district court found that there was nothing that Dr. Lupica did that was anything but sincere. So unless the court has any questions I'll move on. Isn't that really a fact question, whether she was sincere? It's not really. Not on this record. Mr. Kornbaum, he can speak for himself, but is that once there was an allegation that she had missed a broken femur in an infant, that that's a malpractice problem, and so she went on the defensive and said that wasn't here when the baby was here, must be child abuse. And if that, in a hypothetical where that is the  that would be potentially actionable, wouldn't it? To falsely accuse somebody of child abuse to cover for your own malpractice? Well, no one accused her of malpractice at this point. When they said, when Dr. Platt said it was a definite miss, if you look at those emails, 320-321, 888-21, you can see within 40 minutes Dr. Lupica had already responded that this is not the case. But importantly, the medical records show that that is simply not the case. The facts show that there was a full examination done, that there was pulse taken from the infermal veins, that the resident and the attending agree that a full examination was performed. And so we see that in the affidavit of Dr. Lupica on the motion for summary judgment. We also see it in the trial testimony. And we see at 1305 of the record that Dr. Platt simply says that his opinion, or her opinion, was premature.  it just, other than that, I'd rest on my brief. With my limited time... Let me ask you a question. Because this relationship between bad faith and probable cause is of interest to me. If there were strong evidence of bad faith on the part of the doctors or the medical staff in this case, or in some other hypothetical case, that was then made known to the hospital and thereafter made known to whatever deciding authority existed, would that be a basis to undermine probable cause? If there was strong evidence... You mentioned probable cause, which is really the city's main issue, but you said something and I'm asking this question. If there were strong evidence of bad faith... Clear, strong evidence. Clear evidence of bad faith, there would then be evidence to have ... We wouldn't have been able to sustain our burden on the motion for summary judgment because there would have been a genuine issue of fact, but that's not the circumstance here. There's absolutely no evidence of bad faith whatsoever. There's just this theory by the plaintiff that Dr. Lupica in some way fabricated her story despite the contemporaneous records. Moving on, although it was not addressed by plaintiff's counsel, briefly as to the trial issues, there was no abuse of discretion by the district court with regard to the testimony that was allowed. It is clear that the court properly allowed evidence of the plaintiff's behavior as it bore on Dr. Lupica's treatment. She testified that she allowed for more time in light of this. It bore on her being able to re-examine the plaintiff because as it was testified, the plaintiff just wanted to leave. Importantly ... Regarding the initiation prong, if you look at page 879 of the record, Lupica is the straw that broke the camel's back. You have correspondence by Mount Sinai personnel reflecting a conversation with Ms. Rodriguez and not Lawson. Your friends on the other side, Ms. Kominska, Ms. Paulson, say that you've actually not marshaled admissible evidence of bad faith. It's got to be circumstantial evidence,  You don't even have circumstantial evidence. That's what they say, but that's wrong. It's a theory. It's not a theory. Just one point that he said, the hospital's counsel ... I forgot his last name. Mr. Kominska. Kominska. A pleasure to meet you. He said, well, a full examination was done. There was no evidence of malpractice. Judge Engelmeyer found there was evidence of malpractice. That's why the case went to trial. So there's clearly disputed issues of fact. Well, it's one thing to have evidence of malpractice. It's another to have evidence of bad faith. Clearly, if a doctor misses an injury on the child, which is why the court allowed the fact that the child wasn't allowed to be examined by the doctor before she was discharged by the parent. And that's why we're here. But there's also evidence in the record ... I'm just ... Judge Cohn, I'm sorry for being ... I didn't mean to be flippant. My point was, I was just responding to the allegation that there was a full examination done. Also, though, if you look at the email exchanges, Dr. Lupica knows that ACS is involved. She knows that, because she's copied on the email exchanges. And so, I know Mr. Kominska will disagree, but God forbid hospitals cover up for one another when they find out that somebody's committed a mistake. There's no evidence of this brute physical force that Lupica talks about. And so, circumstantially, there should be an issue of fact. I mean, again, do we have evidence that Dr. Lupica said, man, I can't believe I screwed up. I've got to protect myself? No. But do I think it's a reasonable inference? Absolutely. Absolutely. Are you suggesting, then, that we could conclude that the ACS folks are entitled to the dismissal? That they get summary judgment because probable cause was sufficient for them, but that Lupica is in a different boat? Sure. Yes. Of course. And I'm pretty sure we make that clear in our briefs. But yes, Jeff. But that, then, does require us to resolve, I guess, the legal issue as to whether or not a malicious prosecution claim can be brought under 1983 for an ACS situation where we haven't held before. I think you're conflating some issues, Judge. Remember, the claim against the hospital is a civil malicious prosecution claim. Judge Engelmeyer found there was no state action. We're not challenging that on appeal. So, you could find, if we don't think you should, obviously, that's why we're here. But if you found probable cause for the city, and if that probable cause determination hinges on Lupica's statement, in other words, it's a piece of the puzzle that you can consider, then yes, you could find probable cause, both state and civil. You don't have to resolve the issue, although we think you should and we should be in our own, in our favor for the reasons we articulate, but you still have to independently assess whether there was a civil, state law, civil malicious prosecution claim, which the New York Court of Appeals has recognized, against the hospital. For an ACS? No, no, no, no. I mean, for a situation, though, where the harm is that the child is taken away, right? Right, of course, but again, that's what, that's a logical, that's the proximate cause. That's what we're talking about here. And the fact that the jury found for, found no medical malpractice, how does that impact I thought about that, Judge. I think for, I don't think there's an estoppel argument here, which I think you're suggesting, Judge, because as we articulate, it would have been a very different trial. And we identify some of the ways, for example, and again, we're not challenged, challenging these rulings from Judge Englenbart, but having found no malicious prosecution claim against either, he said, all evidence is out. So for example, as we identify, and I wrote some down, jury never heard that they were cleared. I'm sorry, jury never heard that parents were cleared. The jury never heard, where are my notes? The jury never heard that of any evidence about, I'm sorry, I have them written down. We identified in the brief, but I do have this. We have your brief, so that's fine. Oh, but there was nothing about Dr. Grimm, right? So there was no way, nothing, they never heard about the city's own expert, which showed that parents didn't do anything wrong. So it would have been a very different trial, so I don't think you can import, you know, in a sort of non-proton sense, in a retroactive look, what the jury actually found. Thank you very much. Thank you very much. Happy Holidays to everybody. Happy Holidays to all.